IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JENNIFER J. CROSS,           )
                             )
        Plaintiff,           )
                             )
   v.                        )    No. 02 C 8136
                             )
RISK MANAGEMENT ALTERNATIVES,)
INC., a Delaware corporation,)
                             )
        Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer J. Cross sues defendant Risk Management Alternatives, Inc. (RMA) under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the Act). Ms. Cross seeks relief under three sections of the Act: § 1692e, §1692f, and § 1692c(a)(2). RMA is a large debt collection agency with numerous offices across the continental United States. Before the court are cross-motions for summary judgment. Ms. Cross requests judgment only on her first claim, the one in which she invokes § 1692e. RMA asks for judgment on all three of plaintiff's claims. For the reasons stated below, I deny Ms. Cross' motion and grant the motion of RMA.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. In deciding a motion for summary judgment, I must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977 (1987), and must draw all reasonable inferences in the non-movant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990).

Section 1692e prohibits debt collectors from using any false, deceptive or misleading representation or means in the collection of any debt. Ms. Cross' claim under § 1692e is as follows. On March 22, 2002, Ms. Cross filed a Chapter 7 petition in *In re: Cross*, N.D. Ill. Bankr. No. 02 B 11629. Schedule F to her bankruptcy petition listed two consumer debts that were subsequently entrusted to RMA for collection by the respective holders. One of the debts was to AT&T in the amount of $266.32 for telephone service. The other was to Providian Bancorp Services, a credit card issuer (Providian), in the amount of $2,137.47. AT&T was sent notice of Ms. Cross' bankruptcy petition by the clerk of the bankruptcy court on or about March 25, 2002. The filing of the petition triggered the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, and stayed all debt collection efforts by creditors. On June 24, 2002, while the automatic stay was in

effect, RMA sent Ms. Cross a form debt collection letter seeking to collect her debt to AT&T.

Ms. Cross argues, and the cases support her claim in this regard, that sending a letter demanding immediate payment while the debtor is in bankruptcy is "false" in that it asserts that the money is due when, because of the automatic stay, it is not. *Randolph v IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). However, as RMA points out, the Act provides for a bona fide error defense. Title 15 U.S.C. § 1692k(c) states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

I must, therefore, look at the record to determine whether a genuine issue of fact exists as to whether RMA meets the three requirements of this defense. The parties agree that there exists a computerized data base called "Banko" which permits a user to determine whether a debtor has filed for bankruptcy. RMA admits that certain of its employees have access to Banko, but contends that it would not be reasonable for it to use Banko with respect to all debts it attempts to collect; and that it uses the data base primarily with only three particular types of debts (high balances, sub-prime loans, and debts of consumers whom its creditor customers think might file for bankruptcy). RMA's evidence consists of the deposition testimony and subsequent affidavit of Richard Plachta,

3

RMA's Senior Vice President of Operations.[1]

Mr. Plachta states in his affidavit that: neither Providian nor AT&T informed RMA that Ms. Cross had filed for bankruptcy protection; at the time RMA sent the June 24, 2002 letter to Ms. Cross, RMA did not know of her pending bankruptcy; RMA operates its business of collecting the debts of Providian primarily out of RMA's Las Vegas, Nevada office; RMA uses the "ACCESS" computer platform with respect to its collection of Providian debts; RMA was asked by Providian in May 2001 to collect the amount allegedly owing to it from Ms. Cross and utilized the Banko data base to determine if Ms. Cross was involved in a bankruptcy proceeding; Banko reported that there was no information with respect to Ms. Cross; RMA sent a collection letter to Ms. Cross on behalf of Providian on May 5, 2001; on November 12, 2001, Providian recalled Ms. Cross' account from RMA and the RMA Las Vegas office discontinued all collection efforts on the account; on April 9, 2002, RMA's Las Vegas office received a notice from the bankruptcy court of a creditors' meeting; the receipt of the notice was entered into the ACCESS system; RMA has no records indicating that any of its offices ever received Ms. Cross' bankruptcy petition; RMA presumed that its customers would not ask it to collect debts

---

[1] Contrary to Ms. Cross' assertion, I do not find that the Plachta affidavit should be disregarded because it was given after he testified on deposition. The affidavit is consistent with his deposition testimony, and its format makes it a useful resource in considering the issues I must address.

that were the subject of a bankruptcy filing but did not rest on that presumption; RMA used the Banko system for situations in which experience had shown debtors were likely to seek relief in bankruptcy, and Ms. Cross' debt to Providian met the criteria for that classification; because of the amount and the nature of Providian's business (sub-prime lender), RMA used the Banko system with respect to her alleged debt to Providian; the nature of AT&T's long distance consumer business did not fit the within the type of business for which RMA routinely used the Banko system; RMA operates its business of collecting AT&T long distance debts out of its Mendota Heights, Minnesota facility which uses the "FACS" computer system; RMA's Mendota Heights facility never received any document from any court, person or entity with respect to Ms. Cross or her alleged debt to AT&T; AT&T never informed RMA that Ms. Cross had filed for bankruptcy; because there was no information in the FACS system concerning a Cross bankruptcy or about Ms. Cross being represented by an attorney, MRA sent her the June 24, 2002 collection letter; an entry was made in the FACS system on August 1,2002 reflecting that RMA had been advised (apparently by an attorney) that Ms. Cross was in bankruptcy, and RMA ceased all collection efforts as to the alleged debt to AT&T on that date; it is RMA's practice and policy not to share information between the ACCESS and FACS computer systems because (1) they are incompatible, (2) RMA's clients have expressed concerns that another RMA client

5

would learn about the client's customer base and data, and (3) RMA's position is that sharing non-public information between the two data bases could result in a violation of the Gramm-Leach-Bliley Act; even if RMA had shared information between the two data bases, the AT&T entries in the Meeting of Creditors does not demonstrate that an AT&T debt of Ms. Cross other than one for cable television or internet access was subject to bankruptcy. Plachta also avers that RMA did not intend to violate the Act and did not intend to collect a debt "from a person or a debt subject to a bankruptcy proceeding."

Ms. Cross has adduced no admissible evidence to refute or deny the Plachta affidavit. Instead, she argues (Reply 2) that RMA's procedures and policies for determining when to conduct a bankruptcy search "amount to little more than acting like an ostrich with its head in the sand." The ostrich analogy and Ms. Cross' reliance (Reply 4) on two district court decisions, *Turner v. J.V.D.B. & Assoc., Inc.*, 318 F. Supp. 2d 681, 687 (N.D.Ill. 2004) and *Alexander v. Unlimited Progress Corp.*, 2004 WL 2384645 (Case No. 02 C 2063) (N.D.Ill., Oct. 20, 2004), are misplaced. *Turner* and *Alexander*, supra, were cases in which the debt collectors relied *solely* on a presumption that their creditor clients would not send them accounts which were subject to bankruptcy petitions. By contrast, RMA *did* conduct bankruptcy searches on those types of accounts which experience had taught it

6

were most likely to be the subject of bankruptcy petitions. In both *Kort v. Diversified Collection Services*, 394 F.3d 530, 539 (7th Cir. 2005) and *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004), the court expressly held that the FDCPA does not require debt collectors to take every conceivable precaution to avoid errors, but only requires reasonable procedures. I find that the policies and practices described in the Plachta affidavit meet the reasonableness test of the bona fide error defense. In *Hyman*, supra, 362 F.3d at 968, the court held specifically that a debt collector who had reasonable policies and procedures in place to avoid sending dunning letters to debtors in bankruptcy was not required by the statute to use Banko or to independently search bankruptcy records to assure that counts forwarded for collection were not in bankruptcy. For these reasons, I deny Ms. Cross' motion for summary judgment on her § 1692e claim and grant RMA's motion for summary judgment with respect to that claim.

RMA also moves for summary judgment on the other two claims brought by Ms. Cross in her complaint. Section 1692f of the FDCPA makes it unlawful for a debt collector to use unfair or unconscionable means to collect a debt. Ms. Cross alleges that RMA's conduct in sending her a collection letter with respect to a claim she had listed in a bankruptcy petition is unfair and unconscionable. Section 1692c(A)(2) of the Act forbids debt collectors to communicate directly with a debtor who is represented

7

by an attorney. Both sections of the Act are, however, subject to the bona fide error defense provided in Section 1692k(c). The conduct complained of under § 1692f is essentially the same conduct Ms. Cross claims violates § 1692e. Not only does Ms. Cross fail to raise an issue of material fact with respect to that claim, she has abandoned it by stating (Response at 7) that she would not pursue it. She also fails to raise a triable issue of fact with respect to the § 1692c(A)(2) claim, since she offers nothing to contradict Plachta's testimony that RMA was unaware until August 1, 2002 that Ms. Cross was represented by counsel in connection with the AT&T debt, and that RMA ceased all collection efforts as soon as it was so informed. I therefore grant RMA's cross-motion for summary judgment on Counts I and II in their entirety.

**ENTER ORDER:**

_[signature]_

**Elaine E. Bucklo**
United States District Judge

Dated: June __, 2005